MADSEN, J., concurs in the result.

[No. 64729-1. En Banc.]
Argued September 17, 1997. Decided January 8, 1998.
*In the Matter of the Personal Restraint of* PARKER
CHARLES STANPHILL, *Respondent.*

*Christine O. Gregoire, Attorney General*, and *Erin M. Moore* and *John S. Blonien, Assistants*, for petitioner.

*Cece L. Glenn*, for respondent.

JOHNSON, J. — This case examines whether the Indeterminate Sentence Review Board (Board)[1] may use 1993 sentencing ranges of the Sentencing Reform Act of 1981 (SRA) when setting the minimum sentence of a 1975 offender without violating ex post facto and equal protection constitutional guarantees. We reverse the Court of Appeals

---

[1]In 1986, the Board of Prison Terms and Paroles was redesignated as the Indeterminate Sentence Review Board. RCW 9.95.001.

and hold the Board may use current SRA ranges when setting the minimum sentence of pre-SRA offenders.

## FACTS

On March 29, 1975, Parker Charles Stanphill (Stanphill) sexually assaulted L.K. in Franklin County, Washington. On April 14, 1975, Stanphill raped another woman in Pima County, Arizona. In Arizona, Stanphill was convicted of first degree rape and sentenced to a minimum term of 25 years and a maximum term of 45 years. After the conviction, Stanphill was returned to Washington, was tried and convicted of rape on the charges arising out of the March 29, 1975 assault. The trial court judge imposed the statutory maximum life sentence and recommended the Board issue a sentence of no less than five years. His life sentence was to run consecutive to the Arizona sentence. Stanphill was returned to Arizona to complete the remainder of his Arizona sentence.

In March 1985, Stanphill returned to Washington where he served the remainder of his Arizona felony sentence at the Walla Walla State Penitentiary as an out-of-state boarder. Stanphill was discharged from his Arizona sentence in November 1994.

Upon completion of Stanphill's Arizona sentence, the Board was required to determine Stanphill's minimum sentence. In February 1995, the Board set Stanphill's minimum term at 129 months. The Board determined the sentencing range by using the 1993 SRA sentencing grid and manual.

Stanphill filed a personal restraint petition with the Court of Appeals arguing his minimum sentence should be based upon pre-SRA sentencing ranges, and the use of the SRA violated his rights under the ex post facto clause. The Court of Appeals agreed with Stanphill, held the Board's decision constituted an ex post facto violation, and remanded the case to the Board for reconsideration. *In re Stanphill*, No. 15518-8-III, slip op. at 6 (Wash. Ct. App.

Aug. 29, 1996) (per curiam). The Court of Appeals directed the Board to consider not pre-SRA ranges, but rather the SRA's standard range for first degree rape as provided for in the 1983 version of the SRA. *In re Stanphill,* slip op. at 6. Further, the Court of Appeals found the Board's use of the 1993 version of the SRA guidelines violated equal protection guarantees because pre-SRA offenders were treated differently depending upon the year an offender came before the Board. *In re Stanphill,* slip op. at 6.

Under the 1975 indeterminate sentencing scheme, a person convicted of rape was sentenced to a maximum term of life in prison. The minimum term was set by the Board, but could not be less than 5 years. In this case, Stanphill received a minimum sentence of 129 months, and he cannot establish the minimum term imposed alters his punishment or is more disadvantageous to him than it would have been in 1975.

## ANALYSIS

■ For a personal restraint petitioner to prevail, the petitioner must show by a preponderance of evidence that constitutional error has caused him actual harm. *In re Personal Restraint of Powell,* 117 Wn.2d 175, 184, 814 P.2d 635 (1991); *In re Personal Restraint of Cook,* 114 Wn.2d 802, 792 P.2d 506 (1990).

The United States Constitution and the Washington Constitution prohibit the enactment of ex post facto laws. U.S. Const. art. I, § 10, cl. 1[2]; Const. art. I, § 23.[3] As we have repeatedly stated, the ex post facto clause forbids Congress and the states from enacting laws which impose punishment for an act which was not punishable when committed, or which increases the quantum of punishment after the crime was committed. *State v. Hennings,* 129 Wn.2d 512, 524-25, 919 P.2d 580 (1996).

The test we follow when analyzing whether a law violates

---

[2]"No State shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility."

[3]"No bill of attainder, ex post facto law, or law impairing the obligations of contracts shall ever be passed."

the ex post facto clause is well established and consists of three inquiries. *See In re Powell*, 117 Wn.2d at 185. Both parties agree this test guides the proper analysis.

 The first factor considers whether the law in question is substantive or procedural. The State argues Stanphill possess no substantive, vested right in the setting of his minimum term, and the use of the SRA sentencing ranges are procedural. The defendant counters this argument by suggesting the integration of SRA sentencing ranges with indeterminate sentencing fundamentally changes the manner in which a pre-SRA offender is sentenced; thus, the change is substantive. In *In re Powell*, 117 Wn.2d at 185, we addressed, but did not decide, this issue and assumed the changes were substantive for purposes of the analysis. We find the application of determinate sentencing to a pre-SRA offender fundamentally alters the sentencing scheme and hold the changes are substantive.

The second factor is whether the law was enacted after the criminal act took place. A law is retrospective if it "changes the legal consequences of acts completed before its effective date." *Miller v. Florida*, 482 U.S. 423, 430, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 31, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981)). There is no question that the SRA is retrospective. The SRA was enacted after Stanphill committed his crime, and it is being applied to him. Although Stanphill's sentence is governed by the indeterminate sentencing provisions of RCW 9.95, the SRA guidelines are used by the Board to set consistent sentences for SRA and pre-SRA offenders. *See In re Ayers*, 105 Wn.2d 161, 162-63, 713 P.2d 88 (1986).

The third factor, which asks us to determine if the defendant is disadvantaged, has been clarified in *In re Powell*. We stated the sole determination of whether a law is "disadvantageous" is whether the law alters the standard of punishment which existed under prior law. *In re Powell*, 117 Wn.2d at 188; *State v. Ward*, 123 Wn.2d 488, 497, 869 P.2d 1062 (1994).

The Court of Appeals in this case concluded Stanphill had been disadvantaged because he was not sentenced using the earliest version of the SRA under which the standard sentencing ranges were less than the 1993 ranges. However, an increase in a sentencing range is not necessarily an ex post facto violation.[4] The defendant must still establish the change altered his punishment in some way. In other words, the defendant must show *more* punishment. In this case, the defendant's crime was committed when the sentencing court was required to impose an indeterminate maximum sentence of life. In 1975, the Board possessed the ability to set a minimum term of any length, provided it did not exceed the maximum sentence. RCW 9.95.040. When the Board set Stanphill's minimum sentence in 1994, the Board retained the discretion to impose a minimum term of up to life, provided it did so after consideration of the standards, purposes, and ranges of the SRA, and provided the Board set forth adequate written reasons supporting the exceptional sentence. RCW 9.95.009(2). Increases and decreases in the SRA standard sentencing ranges do not increase Stanphill's punishment because, prior to the adoption of the SRA, the Board had the discretion to set his minimum sentence at up to life.

Also, changes in standard range sentences do not violate the ex post facto clause because, in this case, even after the indeterminate minimum sentence is served, there is still no automatic release. The Board cannot release an inmate, regardless of the status of the minimum term, until either the Board determines the inmate has been rehabilitated (and is otherwise fit for release) or the maximum sentence—in this case, life—has been served. RCW 9.95.100. If, after the minimum sentence is served, the Board determines the inmate is not rehabilitated, it then redetermines the inmate's minimum term within the bounds of the maximum term. RCW 9.95.052. Therefore, the mini-

---

[4]As a general rule, when analyzing the effects of sentencing guideline amendments, the prisoner must demonstrate an increase in punishment with certainty before finding an ex post facto violation. *Johnson v. Gomez*, 92 F.3d 964, 968 (9th Cir. 1996), *cert. denied*, 117 S. Ct. 1848, 137 L. Ed. 2d 1050 (1997).

mum term carries with it no guaranty of release—it only establishes a date when the inmate becomes eligible for parole. *See* RCW 9.95.052; *In re Powell*, 117 Wn.2d at 186 n.1. The Board still retains the discretion to set a new minimum term if the inmate has not been rehabilitated.

Even after the adoption of the SRA, the indeterminate sentencing scheme retains the premise of rehabilitation. The insertion of SRA sentencing ranges does not change the goal; it merely standardizes the process and places a tangible date on parole *eligibility*. However, the SRA ranges do not guarantee release and pre-SRA offenders must still establish parolability. For this reason, any inmate serving an indeterminate life sentence can never establish more punishment is being imposed under whatever SRA guideline the Board applies.

Application of SRA sentencing ranges to inmates who committed crimes prior to the SRA's enactment is required by statute. We have held the application of the SRA to indeterminate sentences has created certainty and consistency in the sentencing system and has worked to the inmates' advantage. Our analysis of the ex post facto clause in *In re Powell* clearly illustrates this point and is applicable to the case at bar.

The petitioners in *In re Powell* challenged the constitutionality of a statute requiring minimum sentences of pre-SRA offenders to conform with the SRA. *In re Powell*, 117 Wn.2d at 179. The petitioners argued the statute violated the ex post facto clause because the statute extended the time served before the inmate became eligible for parole. *In re Powell*, 117 Wn.2d at 179. In 1989, the Legislature enacted Substitute House Bill 1457 which required the Board to set the minimum sentence for all pre-SRA offenders serving life sentences. LAWS OF 1989, ch. 259; RCW 9.95.009. When the Board sets the minimum term, the Board must consider the standards, purposes, and sentencing ranges of the SRA. *In re Powell*, 117 Wn.2d at 185-89. The petitioners in *In re Powell* argued the SRA extended the date at which they could be considered for parole. *In re*

*Powell,* 117 Wn.2d at 187. This court agreed the SRA may have extended the earliest parole eligibility date, but found the legislation eliminated the certification process, and it clearly defined the time an inmate was required to serve before parole would be considered.[5] *In re Powell,* 117 Wn.2d at 186-89. The passage of the SRA and the elimination of the certification requirement made the date for the possibility of parole definite and the opportunity for early release mandatory. *In re Powell,* 117 Wn.2d at 193-94. Like the petitioners in *In re Powell,* Stanphill cannot show a vested right in any particular release date; therefore, he cannot show he has been disadvantaged by the Board's use of current SRA ranges in setting his minimum term.

While the change in the law—from indeterminate to determinate sentencing—is substantive and retrospective, it does not disadvantage Stanphill. In 1975, the mandatory minimum term for which Stanphill was convicted was five years and the maximum term was life. The court imposed a maximum term of up to life and, in 1994, Stanphill was sentenced to a minimum term of 129 months. Stanphill's minimum sentence is within the bounds of a permissible 1975 sentence. Further, the sentencing scheme to which Stanphill was subjected was much like the scheme in place in 1975. Consequently, the actual sentence is no lesser and no greater than the sentence Stanphill could have received for his 1975 crime.

We must emphasize that in order to prevail in an ex post facto challenge, the petitioner must show with certainty that the sentence is harsher. The change in the law cannot result in mere speculation that the punishment is more severe. *See Dobbert v. Florida,* 432 U.S. 282, 294, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977); *California Dep't of Corrections v. Morales,* 514 U.S. 499, 509, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995); *Nulph v. Faatz,* 27 F.3d 451, 456 (9th

---

[5]Prior to 1989, pre-SRA offenders subject to mandatory life sentences did not come under Board jurisdiction until two conditions were met: (1) 20 years' consecutive confinement; and (2) issuance of a certificate from a corrections institution superintendent indicating meritorious conduct and recommending parole. RCW 9.95.115 (amended by Laws of 1989, ch. 259, § 3).

Cir. 1994); *Johnson v. Gomez*, 92 F.3d 964, 967 (9th Cir. 1996), *cert. denied*, 117 S. Ct. 1848, 137 L. Ed. 2d 1050 (1997). Stanphill is unable to meet this burden.

Stanphill argues the equal protection clause is violated because the Board applies different SRA sentencing ranges to pre-SRA offenders depending upon the year the offender appears before the Board. The State responds and argues the Board's consideration of current SRA sentencing ranges is rationally related to the State's interest in transitioning between indeterminate and determinate sentencing.

 The constitutions of the United States and of Washington guarantee equal protection under the law. U.S. CONST. amend. XIV, § 1[6]; CONST. art. I, § 12.[7, 8] Equal protection does not require that all persons be dealt with identically, but it does require that the distinction made have some relevance to the purpose for which the classification is made. *Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966). In this case, there must be some relationship and purpose behind the treatment of indeterminate offenders sentenced with reference to the SRA and indeterminate offenders sentenced prior to the adoption of the SRA.

 We begin the analysis with a determination of the appropriate standard of review. The rational relationship test provides the appropriate standard of review unless a suspect class, semisuspect class, or fundamental right is at issue. *In re Boot*, 130 Wn.2d 553, 573, 925 P.2d 964 (1996). A petitioner who is in legal custody after a judgment and sentence is left with a conditional liberty interest. *In re Personal Restraint of Borders*, 114 Wn.2d 171, 176, 786

---

[6]"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[7]"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

[8]The plaintiff does not urge an independent analysis under CONST. art. I, § 12, and, therefore, we analyze this issue under the Fourteenth Amendment.

P.2d 789 (1990). When a statutory classification affects a conditional liberty interest, the rational relationship test applies to the equal protection challenge. *State v. Blilie*, 132 Wn.2d 484, 493-94, 939 P.2d 691 (1997). Under the rational relationship test, the classification will be upheld unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives. *State v. Shawn P.*, 122 Wn.2d 553, 561, 859 P.2d 1220 (1993). The burden of proof is upon the party challenging the classification. *Shawn P.*, 122 Wn.2d at 561.

The appropriate equal protection analysis compares the sentence received in 1994 to the potential punishment in 1975 and determines if there is a rational relationship between the Board's use of the current version of the SRA, the crime committed, and the specific sentence received. Since all offenders serving an indeterminate sentence must establish they are fit for release, there can be no equal protection violation because the opportunity for release has been extended by a change to the SRA sentencing ranges. This is true because similarly situated persons (1975 sexual offenders) are all sentenced under an indeterminate sentencing scheme, and all 1975 sexual offenders are given similar opportunities for release once the minimum sentence has been served. The legitimate state objective is to set consistent sentences and to create certainty within the indeterminate sentencing scheme. The application of the SRA to a pre-SRA offender is rationally related to achieving those goals.

It is important to underscore there is not an equal protection violation merely because the Legislature changed the standard sentencing range for a crime. Nor is there an equal protection violation when the Legislature changed its view of criminal punishment which resulted in offenders being subject to different punishment schemes. In either situation, there is a rational relationship between the change in sentencing ranges or the change in sentencing schemes and the objectives of the Legislature to punish criminal offenders. In addition, the State's use of the current SRA is a deliberate and rational attempt to converge

two distinct sentencing schemes, to transition from indeterminate to determinate sentencing, and to set consistent sentences for similar offenders. RCW 9.94A.010; RCW 9.95.009(2). We find no equal protection violation by the Board for its use of the current SRA sentencing range.

## CONCLUSION

We hold the Board may use current SRA sentencing ranges when setting the minimum sentence of a pre-SRA offender without violating either the ex post facto clauses or equal protection guarantees. Accordingly, we reverse the Court of Appeals and dismiss the personal restraint petition.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.

MADSEN, J., concurs in the result.