224 P.3d 830 (2010)
STATE of Washington, Respondent,
v.
Stuart J. HARRIS, Jr., Appellant.
No. 36565-1-II.
Court of Appeals of Washington, Division 2.
January 7, 2010.
*831 Kathryn A. Russell Selk, Russell Selk Law Office, Seattle, WA, for Appellant.
Melody M. Crick, Pierce County Prosecuting Attorney, Stephen D. Trinen, Pierce County Prosecutors Office, Tacoma, WA, for Respondent.

PART PUBLISHED OPINION
ARMSTRONG, J.
¶ 1 Stuart J. Harris, Jr. appeals his conviction for first degree unlawful possession of a firearm, arguing sufficiency of the evidence, additional evidentiary error, and prosecutorial misconduct. While this appeal was pending, the United States Supreme Court decided Arizona v. Gant,[1] which deals with the scope of a car search pursuant to the arrest of its driver. We allowed the parties to provide supplemental briefs on the Gant issue. We now hold that absent other grounds to support it, the search of Harris's car exceeded the bounds set by Gant and the evidence obtained in the search must be suppressed. Thus, we reverse and remand to the trial court for a hearing as to whether grounds other than the arrest support the search of Harris's car. If the State cannot show other grounds, the trial court must suppress any evidence gathered from the car.

FACTS
¶ 2 One night at 2:00 AM, Officer Steven Rosmaryn stopped Harris's car for a stop sign violation. Harris told Officer Rosmaryn that his name was "Jerrell Jeffrey Johnson" and refused to provide a driver's license or any other identification. 2 Report of Proceedings (RP) at 56-57. Officer Rosmaryn found no record of Jerrell Jeffrey Johnson with the Department of Licensing. When Harris gave his real identity, Officer Rosmaryn discovered that Harris's license had been suspended. He arrested Harris and placed him in the back of the patrol car. Officer Rosmaryn's partner, Officer Albert Schultz, then searched the vehicle incident to the arrest and found a .357 magnum revolver under the "forward portion" of the driver's seat.[2] 2RP at 62, 3 RP at 105. Pieces of the gun were missing and it did not appear to function properly.
*832 ¶ 3 The State charged Harris with first degree unlawful possession of a firearm. Harris did not move to suppress before trial. During trial, the State attempted to show that the gun was operable by asking one officer whether he would fire on a person who pointed the gun at him; the prosecutor then argued in closing that the officer's testimony supported a finding that the gun met the legal definition of a firearm. Harris has raised issues as to this testimony as well as testimony about his ownership of the gun and its status as stolen.

ANALYSIS
¶ 4 After the parties submitted their briefs in this case, the United States Supreme Court decided Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which addressed the search-incident-to-arrest exception to the warrant requirement of the Fourth Amendment. Gant rejected the reading of New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that predominated in the lower courts, namely, that the Fourth Amendment "allow[s] a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." Gant, 129 S.Ct. at 1718. The Court held instead that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Gant, 129 S.Ct. at 1723.[3]
¶ 5 The facts in Gant are similar to those here. Harris was not within reaching distance of the passenger compartment of the car at the time of its search, and there was no reason to believe that the car contained evidence related to the offense for which he was arrested (driving with a suspended license). Therefore, absent other legal support for the search, the officer's search of the car was unlawful.[4]
¶ 6 We granted Harris's motion to file supplemental briefing addressing the applicability of Gant to his appeal, and we begin our analysis with a discussion of that issue.

I. THE APPLICABILITY OF GANT

¶ 7 Generally, United States Supreme Court decisions that announce new constitutional rules governing criminal prosecutions apply retroactively to all criminal cases not yet final on appeal. See Griffith v. Kentucky, 479 U.S. 314, 322, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (failure to apply newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication); State v. McCormack, 117 Wash.2d 141, 144-45, 812 P.2d 483 (1991) (constitutional ruling in criminal case applied retroactively to defendant's case on direct review). Griffith involved two criminal cases, a state prosecution for robbery and a federal prosecution on a drug charge. While the cases were pending on appeal, the Court filed its opinion in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which held that a state criminal defendant establishes a prima facie case of racial discrimination in violation of the Fourteenth Amendment's promise of equal protection where the prosecutor strikes all members of the defendant's race from the jury. Batson, 476 U.S. at 89, 106 S.Ct. 1712. The Griffith Court applied Batson to both the state case (equal protection issue) and the federal case (impartial jury issue), concluding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively *833 to all cases, state or federal, pending on direct review or not yet final." Griffith, 479 U.S. at 328, 107 S.Ct. 708 (emphasis added).
¶ 8 The Court had previously held that its new Fourth Amendment rulings controlled, with one exception not relevant here, all cases not yet final on appeal. United States v. Johnson, 457 U.S. 537, 563, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (citing Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Johnson applied the Court's newly announced decision in Payton limiting routine, warrantless felony arrests under the Fourth Amendment to a case not yet final on appeal. Payton, 445 U.S. 573, 100 S.Ct. 1371. The Washington Supreme Court has followed this directive, holding that Johnson's retroactivity rule required it to apply Payton's warrantless arrest rule even in the face of a state statute that specifically allowed warrantless arrests in the home; the Court concluded that "we are nevertheless bound by the Supreme Court." State v. Counts, 99 Wash.2d 54, 57, 659 P.2d 1087 (1983). In spite of this clear and, on its face, compelling guidance from the United States Supreme Court and the Washington Supreme Court, the State contends that Harris waived his right to obtain relief under Gant because he did not move to suppress before trial.[5]
¶ 9 Under RAP 2.5(a)(3), an appellant may raise for the first time on appeal a claim of manifest error affecting a constitutional right. State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995). In analyzing alleged constitutional error for the first time on appeal, we must determine whether the alleged error in fact suggests a constitutional issue and whether the error is manifest; i.e., whether the asserted error had practical and identifiable consequences in the trial of the case. State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992). If the alleged error is manifest, we must address the merits of the constitutional issue. If we find a manifest constitutional error, we then must undertake a harmless error analysis. Lynn, 67 Wash.App. at 345, 835 P.2d 251.
¶ 10 Understanding that an issue involving an unlawful search is one of manifest constitutional error, we have addressed such issues for the first time on review. See, e.g., State v. Littlefair, 129 Wash.App. 330, 338, 119 P.3d 359 (2005) (appellant did not waive error based on bad search warrant because it involved constitutional issue); State v. Contreras, 92 Wash.App. 307, 314, 966 P.2d 915 (1998) (where adequate record exists, appellate court can review suppression issue, even in absence of motion or trial court ruling thereon). The Washington Supreme Court held that RAP 2.5(a)(3) did not apply, however, where an appellant withdrew a motion to suppress before trial. State v. Valladares, 99 Wash.2d 663, 671-72, 664 P.2d 508 (1983). The court cited this affirmative action as an express waiver of his right to raise the admission of evidence seized in a warrantless search. Valladares, 99 Wash.2d at 672, 664 P.2d 508. Division Three distinguished this holding where the law applicable to the search changed between the time of trial and appeal. State v. Rodriguez, 65 Wash.App. 409, 417, 828 P.2d 636 (1992). Even though defense counsel withdrew his pretrial motion to suppress, the court allowed him to raise the issue on appeal because of a change in the law announced by our Supreme Court. Division Three found no Valladares waiver because, at the time of trial, the parties and the court would have reasonably relied on a Court of Appeals decision that was subsequently reversed. Rodriguez, 65 Wash.App. at 417, 828 P.2d 636. The court found review of the issue permissible under RAP 2.5(a)(3). Rodriguez, 65 Wash.App. at 417, 828 P.2d 636.
¶ 11 Valladares and Rodriguez reinforce the definition of waiver as "`an intentional relinquishment or abandonment of a known *834 right or privilege.'" State v. Riley, 19 Wash. App. 289, 294, 576 P.2d 1311 (1978) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). In a case the State cites to support a finding of waiver here, the Washington Supreme Court found that the appellant waived his right to move to suppress evidence because he "was fully aware of the circumstances surrounding his arrest by the time the allegedly illegally seized items were offered into evidence. He chose to remain silent. His motion to suppress at the end of the state's case in chief came too late." State v. Baxter, 68 Wash.2d 416, 424, 413 P.2d 638 (1966). Here, Harris was unaware of the change in the law that would render the search of his car potentially unlawful until well after his conviction. The circumstances do not support a finding of waiver under the cases cited above.
¶ 12 The State encourages us to look to federal law for guidance in resolving the waiver issue. Although the federal courts generally hold that an issue not presented to the trial court cannot be raised for the first time on appeal, there is an exception to this rule where a new theory or issue arises while an appeal is pending because of a change in the law. United States v. Echavarria-Escobar, 270 F.3d 1265, 1268 (9th Cir.2001); United States v. Whitten, 706 F.2d 1000, 1002 (9th Cir.1983) (citing Hormel v. Helvering, 312 U.S. 552, 557-58, 61 S.Ct. 719, 85 L.Ed. 1037 (1941) and Singleton v. Wulff, 428 U.S. 106, 120-21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). As Judge Posner of the Seventh Circuit observed,
A party should be allowed to take advantage of a decision rendered during the pendency of his case, even if he had not reserved the point decided, if the decision could not have reasonably been anticipated. A contrary rule would induce parties to drown the trial judge with reservations.
McKnight v. Gen. Motors Corp., 908 F.2d 104, 108 (7th Cir.1990) (cited in United States v. Charley, 189 F.3d 1251, 1279 (10th Cir. 1999) (Holloway, J., concurring and dissenting)). This exception allows a federal court to consider sua sponte a claim not initially raised on appeal. See United States v. Garcia, 77 F.3d 274, 276 (9th Cir. 1996) (court considered sua sponte recent United States Supreme Court decision and concluded that it required the conviction to be overturned). Courts also may reach an issue for the first time on appeal in a case of plain error, which is assessed at the time of appellate consideration. See Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (holding that intervening change in the law made error plain on appeal). Where the law has changed between the time of trial and appeal, the Court rejected the argument that the claim of error needed to be preserved with an objection at trial, concluding that "such a rule would result in counsel's inevitably making a long and initially useless laundry list of objections to rulings that were plainly supported by existing precedent." Johnson, 520 U.S. at 468, 117 S.Ct. 1544.
¶ 13 The federal rules specifically address the failure to file a motion to suppress before trial, stating that such failure is considered waiver of the alleged error for which relief may be granted for good cause shown. United States v. Smith, 131 F.3d 1392, 1397 (10th Cir.1997) (relying on Fed.R.Crim.P. 12(b)(3) and (f) (now subsection (e))). The Seventh Circuit explains that where a defendant merely neglects to make a suppression motion before trial (as opposed to intentionally forgoing the motion), a Rule 12 waiver "`is more akin to a forfeiture than a waiver'" and will call for plain-error review provided the defendant can make the good cause showing the rule requires. United States v. Hargrove, 508 F.3d 445, 450 (7th Cir.2007) (quoting United States v. Johnson, 415 F.3d 728, 730 (7th Cir.2005)). The Sixth Circuit has stated that "there is some debate over whether we should treat a suppression argument raised for the first time on appeal as a waiver (subject to review only if the defendant can show `good cause') or a forfeiture (subject to `plain error' review)." United States v. Caldwell, 518 F.3d 426, 430 (6th Cir.), cert. denied, ___ U.S. ___, 128 S.Ct. 2985, 171 L.Ed.2d 905 (2008). In any event, there are exceptions to the rule's waiver provision.
¶ 14 The dissent cites a passage from United States v. Booker, 543 U.S. 220, 267, *835 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and argues that it stands for the proposition that the retroactive application of a new criminal rule does not relieve the defendant of the obligation to preserve a challenge for appellate review. What the passage cited states, however, is that in reviewing alleged Sixth Amendment errors, a court must determine whether the issue was raised below and whether it fails the plain error test. The latter test allows reviewing courts to review such error where it was not raised at trial. See, e.g., United States v. Brown, 444 F.3d 519, 521 (6th Cir.2006) (citing Booker and explaining that because defendant did raise sentencing objection below, review is for harmless error rather than plain error); United States v. Villegas, 404 F.3d 355, 358 (5th Cir.2005) (citing Booker after stating that because of the lack of objections below, review is for plain error); People v. Nitz, 219 Ill.2d 400, 412, 848 N.E.2d 982, 302 Ill.Dec. 418 (2006) (stating that Booker allows it to apply plain error review to sentencing error where defendant failed to raise timely objection); and State v. Yoh, 180 Vt. 317, 340, 910 A.2d 853 (2006) (citing Booker and stating that issue not raised below is reviewed for plain error).
¶ 15 As the dissent explains, Booker is the federal counterpart to Blakely, which largely invalidated Washington's exceptional sentencing procedure. Blakely, 542 U.S. at 305, 124 S.Ct. 2531. And both this court and the Washington Supreme Court applied Blakely without regard to whether the defendant challenged his exceptional sentence at trial. See, e.g., State v. Monroe, 126 Wash.App. 435, 109 P.3d 449 (2005), overruled on other grounds, State v. Clarke, 156 Wash.2d 880, 134 P.3d 188 (2006); State v. Brundage, 126 Wash.App. 55, 107 P.3d 742 (2005); In re Pers. Restraint of VanDelft, 158 Wash.2d 731, 147 P.3d 573 (2006); State v. Cubias, 155 Wash.2d 549, 120 P.3d 929 (2005). Indeed, in Monroe, the author of the dissenting opinion here explained that the defendant's stipulation to certain sentencing facts did not waive his right to seek relief under Blakely:
When Monroe consented to judicial fact-finding, Blakely had not been issued and it was the established rule of this state that a defendant had no right to have a jury decide facts supporting exceptional sentences. Monroe could not have knowingly waived his right to jury fact-finding at sentencing when the only controlling precedent held that he had no such right.
Monroe, 126 Wash.App. at 442, 109 P.3d 449 (footnote and citation omitted); see also State v. O'Connell, 137 Wash.App. 81, 89, 152 P.3d 349 (Blakely error is manifest constitutional error and may be considered for the first time on appeal), review denied, 162 Wash.2d 1007, 175 P.3d 1094 (2007). The same analysis applies here. Harris did not waive his right to seek relief under Gant.
¶ 16 We note that a different panel of this court did find a Gant challenge waived where the appellant failed to move to suppress based on pre-Gant law. State v. Millan, 151 Wash.App. 492, 212 P.3d 603 (2009). The majority in Millan cited a long list of federal cases to support its finding of waiver, but none of those cases involved a change in the applicable constitutional right between the time of trial and appeal. Millan, 212 P.3d at 606-07. Another panel recently rejected the waiver analysis in Millan, reasoning instead that defendants may take advantage of Gant on appeal whether or not they moved to suppress before trial. State v. McCormick, 152 Wash.App. 536, 216 P.3d 475, 477 (2009).
¶ 17 In its briefing to the court in this case, the State cites numerous cases where waiver is applied to reject a Fourth Amendment challenge raised for the first time on appeal. Again, none of these cases involves a change in the law that would invalidate the search that occurred in that case. It is simply unfair, and a contradiction of the Supreme Court's retroactivity rule, to hold that an appellant cannot challenge a search made unlawful by intervening case law. See McCormick, 216 P.3d at 477. On the record before us, the warrantless search of Harris's car presents an issue of manifest constitutional error prompted by a change in the law, and we decline to hold that Harris waived the right to challenge that search under Gant by failing to bring a meritless motion to suppress before trial. In conclusion, we are satisfied that even if we had the power to do *836 so, we should not deny Harris his constitutional rights under Gant.
¶ 18 The State also argues that the good-faith exception should apply to excuse the warrantless search of Harris's car. It points out that Harris argues for relief based only on Gant, which rests on an analysis of the Fourth Amendment to the United States Constitution, and that federal law recognizes a good-faith exception to the warrant requirement. See State v. Eisfeldt, 163 Wash.2d 628, 639 n. 10, 185 P.3d 580 (2008) ("The Fourth Amendment, unlike article I, section 7, allows good-faith exceptions to the warrant requirement.").
¶ 19 The federal courts disagree as to whether the good-faith exception applies to searches that are unlawful under Gant. The Tenth Circuit noted that the United States Supreme Court has applied the good-faith exception to cases where police reasonably relied on a warrant that was subsequently declared invalid; to cases involving warrantless administrative searches performed in reliance on a statute that was later declared unconstitutional; to a search based on mistaken information in a court's database indicating that an arrest warrant was outstanding; and to police reliance on the negligent mistake of a fellow law enforcement employee. United States v. McCane, 573 F.3d 1037, 1042-43 (10th Cir.2009). The McCane court decided to extend the good-faith exception to a search justified under settled case law that was later rendered unconstitutional by a Supreme Court decision. McCane, 573 F.3d at 1044. Observing that the purpose of the exclusionary rule is to deter police misconduct, the court reasoned that a police officer who undertakes a search in reasonable reliance on settled law, even though the search is later deemed invalid by Supreme Court decision, has not engaged in misconduct. McCane, 573 F.3d at 1044. Accordingly, the appellant was not entitled to relief under Gant. See McCane, 573 F.3d at 1045; see also United States v. Grote, 629 F.Supp.2d 1201, 1206 (E.D.Wash.2009) ("Application of the good faith exception here is not intended to excuse a mistake on the part of [the officer], but to recognize that Gant represents a change in well-established law on which law enforcement officers once reasonably relied.").
¶ 20 In an even more recent decision, however, the Ninth Circuit Court of Appeals declined to extend the good-faith exception to cases where the officers were relying on pre-Gant case law generated by the United States Supreme Court. United States v. Gonzalez, 578 F.3d 1130 (9th Cir.2009); see also United States v. Buford, 623 F.Supp.2d 923 (M.D.Tenn.2009). The court observed that neither it nor the Supreme Court had applied the good-faith exception to the scenario at issue: a search conducted under a then-prevailing interpretation of a Supreme Court ruling, but rendered unconstitutional by a subsequent Supreme Court ruling announced while the defendant's conviction was on direct review. Gonzalez, 578 F.3d at 1132. The court concluded that the case should be controlled by long-standing precedent governing the applicability of a new rule announced by the Supreme Court while a case is on direct review. Gonzalez, 578 F.3d at 1132. "To hold that Gant may not be fully applied here, as the Government urges, would conflict with the Court's retroactivity precedents." Gonzalez, 578 F.3d at 1132. Consequently, the court held that evidence derived from the search at issue required suppression and reversed the conviction. Gonzalez, 578 F.3d at 1133; see also Buford, 623 F.Supp.2d at 926-27 (finding no logical support for an extension of the good-faith exception and granting the defendant's motion to suppress, based on Gant).
¶ 21 We too decline to apply the good-faith exception here. Such an extension would conflict with the rule granting retroactive application of new constitutional rules in criminal cases. See Griffith, 479 U.S. at 328, 107 S.Ct. 708; McCormick, 216 P.3d at 477. We remand this case to the trial court to conduct an evidentiary hearing and consider whether any other exceptions to the warrant requirement might apply in this case. See Gant, 129 S.Ct. at 1724 (referring to possibility that "another exception to the warrant requirement" could validate a search made unlawful by the decision); RAP 9.11(a) (allowing this court to direct trial court to take additional evidence). Because the warrantless *837 search of Harris's car might still pass constitutional muster, we turn to his remaining issues.
¶ 22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
I concur: PENOYAR, A.C.J.
QUINN-BRINTNALL (dissenting).
¶ 41 I begin with the proposition that appellate courts are error-correcting courts that confine their review to the trial court record. Unless a party files a motion to suppress evidence seized pursuant to a constitutionally infirm search, the trial court will not enter findings of fact or conclusions of law and will not issue a ruling. Thus, the record on appeal will contain no ruling to which error may be assigned and it will contain no decision, correct or otherwise, to review. As Division One of this court stated in State v. Tarica, 59 Wash.App. 368, 372, 798 P.2d 296 (1990), overruled on other grounds by State v. McFarland, 127 Wash.2d 322, 899 P.2d 1251 (1995), "There is no question that the search and seizure issue presented is constitutional, and there is a reasonable possibility that a motion to suppress, had it been made, would have been successful. However, there was no error in the trial court proceedings below." In ruling that this case must be remanded with directions to the trial court to conduct a suppression hearing, the majority speculates that the trial court committed reversible error by admitting evidence to which the defendant did not timely object as required by court rule and applies an improper de novo standard of review to the record on appeal. Accordingly, I respectfully dissent.
¶ 42 Where the voluntariness and reliability of a defendant's statement are at issue, the statement is inadmissible unless the trial court first determines that the statement was lawfully obtained. CrR 3.5(c) provides: "After [a hearing to determine whether a defendant's statement is admissible, the trial] court shall set forth in writing [a] conclusion as to whether the statement is admissible and the reasons therefor." Thus, a trial court that admits a defendant's statement, without an express ruling that it is voluntary, errs. In contrast, relevant physical evidence is admissible at trial unless the party seeking to exclude it files a motion to suppress. CrR 3.6(a) provides: "Motions to suppress physical ... evidence ... shall be in writing supported by an affidavit or document setting forth the facts the moving party anticipates will be elicited at the hearing, and a memorandum of authorities in support of the motion." Thus, a trial court that admits evidence to which no motion to suppress had been made commits no error.
¶ 43 Here, the trial court committed no error when it admitted unchallenged evidence seized following the search of Stuart J. Harris, Jr.'s car. The majority's speculative ruling that the trial court may have committed an error of constitutional magnitude by admitting such evidence is, in my opinion, mistaken for several reasons. First, there is no manifest error, meaning an error appearing on the record affecting a constitutional right and giving this court authority to address Harris's untimely evidentiary challenge. RAP 2.5(a)(3); see McFarland, 127 Wash.2d at 333, 899 P.2d 1251 ("If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest.") (citing State v. Riley, 121 Wash.2d 22, 31, 846 P.2d 1365 (1993)). Second, because Harris did not timely challenge the admissibility of the evidence before or even during trial, the trial court made no ruling for us to review. CrR 3.6; ER 103(a)(1); State v. Guloy, 104 Wash.2d 412, 421, 705 P.2d 1182 (1985). And third, the de novo standard of review is the appropriate standard for review of search warrants where all evidence is documentary and appears in the appellate record, State v. Estorga, 60 Wash.App. 298, 304 n. 3, 803 P.2d 813, review denied, 116 Wash.2d 1027, 812 P.2d 102 (1991), but the appropriate standard of review of other searches differs. See, e.g., State v. Johnson, 104 Wash.App. 409, 414, 16 P.3d 680 (substantial evidence supported trial court finding that officer did not push his way into defendant's house and, thus, lawfully entered home without a search warrant), *838 review denied, 143 Wash.2d 1024, 25 P.3d 1020 (2001).
¶ 44 We ruled in State v. Millan, 151 Wash.App. 492, 212 P.3d 603 (2009), that unless the defendant has filed a motion to suppress evidence seized during a search incident to arrest in the trial court, he may not challenge the admission of the evidence seized during that search for the first time on appeal.[7] In determining that Millan was barred from raising a challenge to the admission of the seized evidence by failing to suppress the evidence below, we quoted our Supreme Court's decision in State v. Mierz, 127 Wash.2d 460, 468, 901 P.2d 286 (1995), which stated that a defendant's "`failure to move to suppress evidence he contends was illegally gathered constitutes a waiver of any error associated with the admission of the evidence and the trial court properly considered the evidence.'" Millan, 151 Wash.App. at 500, 212 P.3d 603. Here, the trial court did not have the opportunity, nor was it required, to rule on the admissibility of evidence seized from Harris because Harris waived any violation of his right to privacy when he failed to move to suppress the evidence below. CrR 3.6. The unchallenged evidence was admissible. Accordingly, the record here contains no hearing and there is nothing for us to review.
¶ 45 I turn now to whether the United States Supreme Court's decision in Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), requires suppression of the evidence obtained in the October 21, 2006 search of Harris's car. Because there is no trial court ruling to which Gant's analysis would apply, it clearly does not.
¶ 46 Initially, I note that, in Millan, the State, citing Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), conceded that Gant applied to all cases not yet final. 151 Wash.App. at 496, 212 P.3d 603. Although we accepted the State's concession, Griffith "concern[ed] the retrospective application of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)." 479 U.S. at 316, 107 S.Ct. 708. In Batson, the Supreme Court ruled that the systematic use of peremptory challenges to preclude jurors of color violated Batson's equal protection rights. 476 U.S. at 99, 106 S.Ct. 1712. As with other issues that involve "the very integrity of the fact-finding process," Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), retroactive application of Batson was necessary to protect "the clear danger of convicting the innocent." Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). In contrast, Linkletter held that the rule announced in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), excluding evidence obtained through an unreasonable search and seizure, would not be applied retroactively to cases finally decided because "that [ ] rule affected evidence `the reliability and relevancy of which is not questioned.'" Johnson v. New Jersey, 384 U.S. 719, 727, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (quoting Linkletter, 381 U.S. at 639, 85 S.Ct. 1731). The Court's ruling in Gant mirrors the effects of Mapp and the considerations expressed by the Linkletter Court are compelling.
¶ 47 Although Linkletter and Tehan concerned the retroactivity of new criminal rules in the context of final judgments, in Johnson, 384 U.S. 719, 86 S.Ct. 1772, the United States Supreme Court applied the reasoning of Linkletter and Tehan to find that the new criminal rules announced in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), would only apply to cases in which the trial began after the date of those decisions. In holding that Escobedo and Miranda would only apply prospectively, the Johnson Court stated:
[Linkletter and Tehan] establish the principle that in criminal litigation concerning constitutional claims, "the Court may in the interest of justice make the rule prospective where the exigencies of the situation require such an application." [381 U.S. at 628, 85 S.Ct. 1731; 382 U.S. at 410, *839 86 S.Ct. 459. Linkletter and Tehan] also delineate criteria by which such an issue may be resolved. We must look to the purpose of our new standards governing police [conduct], the reliance which may have been placed upon prior decisions on the subject, and the effect on the administration of justice of a retroactive application of [new criminal rules].
....
... [T]he retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved. Accordingly as Linkletter and Tehan suggest, we must determine retroactivity "in each case" by looking to the peculiar traits of the specific "rule in question." [381 U.S. at 629, 85 S.Ct. 1731, 382 U.S. at 410, 86 S.Ct. 459.]
384 U.S. at 726-27, 728, 86 S.Ct. 1772.
¶ 48 Admittedly, although cases such as United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), and Griffith, 479 U.S. 314, 107 S.Ct. 708, indicate a departure from the criteria approach to determining the retroactivity of new criminal rules in favor of a threshold determination, the Supreme Court has indicated that, notwithstanding the retroactivity of new criminal rules to cases on direct review, reviewing courts are expected "to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below." United States v. Booker, 543 U.S. 220, 268, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).
¶ 49 In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court held that provisions of Washington's Sentencing Reform Act of 1981 (ch. 9.94A RCW) allowing aggravating factors supporting an exceptional sentence to be proved to a judge by a preponderance of the evidence rather than beyond a reasonable doubt to a jury violated the defendant's constitutional due process and jury trial rights. Following Blakely, the Supreme Court invalidated portions of the Federal Sentencing Reform Act. Booker, 543 U.S. at 220-21, 125 S.Ct. 738. Discussing the retroactive application of Booker, the Supreme Court stated:
As these dispositions indicate, we must apply today's holdingsboth the Sixth Amendment holding and our remedial interpretation of the Sentencing Actto all cases on direct review. [Citing Griffith, 479 U.S. at 328, 107 S.Ct. 708.] That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain-error" test. It is also because, in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine.
543 U.S. at 268, 125 S.Ct. 738.
¶ 50 As Booker indicates, the retroactive application of a new criminal rule does not relieve the defendant of the obligation to preserve a challenge for appellate review. Thus, to preserve a challenge to the admissibility of evidence seized without a warrant, the defendant may constitutionally be required to have filed a timely pretrial motion to suppress the evidence. See, e.g., CrR 3.6.
¶ 51 The majority makes much of what it perceives to be an inconsistency between my opinion in State v. Monroe, 126 Wash.App. 435, 109 P.3d 449 (2005), remanded, 157 Wash.2d 1016, 142 P.3d 172 (2006), and in Millan. I disagree. Although I wrote in Monroe that Blakely applied retroactively such that Monroe could not have knowingly waived his jury trial rights by stipulating to judicial fact-finding, that was in the context of a manifest error affecting the integrity of the judgment because the ruling was entered on the lower pre-Blakely preponderance of the evidence standard and not by a jury of Monroe's peers. Monroe, 126 Wash.App. at 441-42, 109 P.3d 449. Where a manifest *840 error of constitutional magnitude exists affecting the truth-seeking function of a criminal prosecution, it is and has been my opinion that such an error impugns the integrity of due process and requires redress. But challenges to the admissibility of evidence obtained during an allegedly unlawful search are not manifest on the record and do not affect the reliability of the evidence or the truth-seeking function of the criminal process, nor do they impugn the integrity of the trial court's process in conducting the criminal prosecution. Although Gant and the cases following and applying Gant most often deal with seizures of the popular illegal drug of the day, searches incident to lawful arrests can and have secured a knife identified by a rape victim, an abducted child's tennis shoe, and a murder victim's brain tissue. The search and seizure rules for all evidence seized incident to a lawful arrest must be the same and we should neither ignore nor abandon long-standing issue preservation requirements merely because the evidence at issue in the case immediately before the court happens to be an illicit drug. The somewhat summary conclusion that Gant issues may be raised for the first time on appeal, in my opinion, is inconsistent with the long-standing rules requiring preservation of search and seizure challenges for appellate review.
¶ 52 Under the Fourth Amendment, on which Gant is based, it is well established that the issue of the reasonableness of the search must be preserved for appeal by the filing of a motion to suppress in the trial court raising the specific grounds on which the search is challenged. In United States v. Bravo, noted at 306 Fed. Appx. 436, 440 (10th Cir.2009),[8] the court addressed whether Bravo could challenge the legitimacy of a search conducted by a Canine Interdiction Unit of the Oklahoma Bureau of Narcotics which had been found unreasonable in City of Indianapolis v. Edmond, 531 U.S. 32, 45, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), when he challenged only the lawfulness of his traffic stop before trial. The Bravo court stated:
Mr. Bravo did not preserve this issue for appeal. While Mr. Bravo reserved the right to appeal the denial of the motion to suppress, R. Doc. 48 at 5 ¶ 8(a), we note that "[a] reservation of the right to appeal a specific pretrial ruling by the district court extends only to theories raised in the challenged ruling," United States v. Ochoa-Colchado, 521 F.3d 1292, 1299 (10th Cir.2008). Mr. Bravo did not argue that the initial stop violated Edmond in his written motion, supplement, or oral presentation to the district court; rather, he argued that the agent lacked reasonable suspicion to detain him after the traffic stop, that the agent lacked jurisdiction as a narcotics officer to stop him for a traffic violation, and that the agent's actions constituted selective enforcement violative of the Equal Protection Clause. See R. Doc. 18 at 3, 7, 14-15; R. Doc. 37. Accordingly, Mr. Bravo failed to preserve the Edmond argument for appeal.
306 Fed. Appx. at 440 (alteration in original).
¶ 53 In short, it is up to our nation's highest court to determine whether Gant applies only to searches made after its announcement (which would necessarily be unreasonable as a matter of law by virtue of Gant), and whether we follow the long-standing requirement that challenges to the admissibility of evidence under the Fourth Amendment must be preserved for appellate review.
¶ 54 I see no reason to repeat the injustice the Linkletter Court identified when it declined to apply the exclusionary rule adopted in Mapp to government conduct expressly condoned by our country's highest court's prior rulings. As the Court noted in Johnson, at least when it announced Mapp, the states were on notice that they were constitutionally forbidden from engaging in unreasonable searches and seizures under Wolf v. People of the State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), overruled on other grounds by Mapp, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. 384 U.S. at 731, 86 S.Ct. 1772. Because no such notice preceded Escobedo and Miranda, "[l]aw enforcement agencies fairly relied on [our] prior *841 cases, now no longer binding, in obtaining incriminating statements during the intervening years preceding Escobedo and Miranda." Johnson, 384 U.S. at 731, 86 S.Ct. 1772. Likewise, the search incident to Harris's arrest conducted here was expressly approved by the high Court in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and law enforcement agencies had a right to fairly rely on it when deciding whether to seek a warrant prior to searching the interior of a vehicle following a suspect's arrest.
¶ 55 In my opinion, a law enforcement officer who acted in reliance on Belton's bright line rule is similar to a law enforcement officer who arrests an individual under a statute later found to be unconstitutional. In such a situation, the Washington Supreme Court has ruled that the subsequent invalidation of the statute does not render the arrest unlawful if it was otherwise lawful at the time the arrest was made. See State v. Brockob, 159 Wash.2d 311, 341-43, 150 P.3d 59 (2006) (despite subsequent invalidation of statute upon which arrest was made, search incident to arrest was lawful because officer's reliance on statute was reasonably prudent at the time of arrest). Brockob's analysis should not be confused with the fluid concepts of the "good faith" exception to searches conducted under the Fourth Amendment.[9]Arizona v. Evans, 514 U.S. 1, 14-16, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); Illinois v. Krull, 480 U.S. 340, 349-50, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Massachusetts v. Sheppard, 468 U.S. 981, 988-91, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). Unlike the "good faith" exception, which focuses on the law enforcement officer's conduct and the degree to which the known facts imply prohibited conduct,[10]Brockob recognizes that when the law existing at the time the law enforcement officer acted expressly authorized and approved his conduct, no unlawful act occurs.[11] 159 Wash.2d at 341-43, 150 P.3d 59. Thus, Brockob applies reasoning similar to that stated by the United States Supreme Court in Johnson when it declined to apply Escobedo and Miranda to cases in which "[l]aw enforcement agencies fairly relied on [] prior cases, now no longer binding," in performing their duties. 384 U.S. at 731, 86 S.Ct. 1772.
¶ 56 Assuming, as I must for now, that Gant applies to Harris's appeal, he has nonetheless failed to preserve for our review an issue to which the holding in that case applies. He did not object to the admissibility of the evidence obtained during the search of his vehicle incident to a lawful arrest and, thus, has failed to follow the steps necessary to preserve a challenge under the Fourth Amendment to the United States Constitution for our review under any standard. Accordingly, I respectfully dissent.
NOTES
[1] Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).
[2] Officer Rosmaryn testified at a CrR 3.5 hearing that he learned from a computer check that Harris had outstanding warrants for his arrest and a suspended driver's license.
[3] Our Supreme Court recently reevaluated the search incident to arrest exception under article I, section 7 of the Washington Constitution. State v. Valdez, 167 Wash.2d 761, 777-779, 224 P.3d 751 (2009). The court held that a warrantless search of an automobile is permissible under this exception when that search is necessary to preserve officer safety or prevent destruction or concealment of evidence of the crime of arrest. Valdez, at 777-779, 224 P.3d at 759-60; see also State v. Patton, 167 Wash.2d 379, 219 P.3d 651 (2009).
[4] Harris challenges his search only under the Fourth Amendment. Our Supreme Court recently held that "inevitable discovery" can no longer justify a warrantless search under article I, section 7 of the Washington Constitution. State v. Winterstein, 167 Wash.2d 620, 636, 220 P.3d 1226.
[5] The State's argument assumes that a state rule of appellate practice controls over Supreme Court decisions based not on a rule of federal appellate practice, but on the policies of "principled decision making," the court's responsibility to do justice to each litigant, and its goal of treating similarly situated litigants similarly. See Griffith, 479 U.S. at 323, 107 S.Ct. 708. The State does not address this issue. Even if we accept the State's underlying assumption, its argument fails as we discuss above.
[7] I note that State v. McCormick, 152 Wash.App. 536, 216 P.3d 475, 477 (2009), questioned Millan's holding, but McCormick timely filed a pretrial motion to suppress under CrR 3.6 and its comments regarding Millan are dicta.
[8] Fed. R.App. P. 32.1 allows citation to its unpublished opinions for persuasive value. GR 14.1(b).
[9] In McCormick, this court purported to apply rulings rejecting the "good faith" exception issued by our Supreme Court and governing searches under article 1, section 7 of the Washington Constitution to a case in which the defendant was challenging the lawfulness of the search of his vehicle under Gant. 216 P.3d at 478. But Gant rests on the Fourth Amendment to the United States Constitution to which the "good faith" exception clearly applies. Therefore, that portion of McCormick addressing the unavailability of the "good faith" exception in a Gant challenge is not supported by the Washington Supreme Court cases on which it relies.
[10] See, e.g., Krull, 480 U.S. at 347-50, 107 S.Ct. 1160 (discussing how the "good faith" exception relates to the exclusionary rule's purpose of deterring future unlawful police conduct).
[11] Although Washington does not recognize a good faith exception to the warrant requirement under article 1, section 7 of the Washington Constitution, it has long applied the exclusionary rule to situations in which law enforcement officers have been found to have acted in "bad faith" by using a traffic infraction as a pretext to justify a search of a suspect's vehicle. State v. Ladson, 138 Wash.2d 343, 979 P.2d 833 (1999).