# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69423-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ROY PURCELL JACKSON, JR., | ) | |
| | ) | |
| Appellant. | ) | FILED: August 11, 2014 |
| | ) | |

LEACH, J. — Roy Jackson Jr. appeals his conviction for assault in the first degree and assault in the second degree. He claims that his guilty plea was involuntary because he received misinformation about the sentencing consequences of this plea. Jackson also claims that the trial court abused its discretion when it denied his request for a competency evaluation and that the court had no authority to impose a lifetime no-contact order. Because Jackson shows no error, we affirm.

## FACTS

On April 20, 2011, while riding a Metro bus, Jackson shot passenger Antoine Greenhaigh twice in the stomach. Jackson then pointed the gun at the bus driver, Margaret Caster, and told her to open the door to let him out. After Caster complied, Jackson ran away.

The State charged Jackson with first degree assault against Greenhaigh and second degree assault against Caster. The State sought firearm enhancements on both counts.

After Jackson's arraignment, Dr. Kenneth Muscatel, an expert from the King County Office of the Public Defender, evaluated Jackson "to see if . . . [Jackson] had a defense of diminished capacity." Muscatel described Jackson as "a paranoid, suspicious but also rather cagey individual," who claimed no memory of the shooting initially based upon the "misplaced belief that not remembering what occurred was sufficient for a mental defense." Muscatel determined that Jackson "has chronic paranoid features and was high on Sherm and marijuana at the time of the alleged incident." He opined that Jackson had the "capacity to form the general intent to pull, point and shoot the gun at the victim" and that "there is insufficient information to conclude he was so impaired he couldn't form the intent to assault." Muscatel concluded that Jackson "does not meet the level of Diminished Capacity." In his report, Muscatel stated that he had "little doubt" that Jackson "engaged in this conduct due to factors of mental health and substance abuse. Such factors meet the criteria for a court to consider as mitigating factors in rendering a sentence if Mr. Jackson were found guilty of this offense."

On November 23, 2011, defense counsel Kris Jensen asked for a competency evaluation at Western State Hospital because Jackson was "inconsistent in his communicating" with Jensen. Jensen stated that his

conversations with Jackson "have always been . . . hit or miss. Sometimes he is with me, sometimes he is not [with] me; sometimes we have nutty discussions, and sometimes they are kind of on point." He told the court that his initial requests to visit Jackson in jail were unsuccessful. Because Jackson was "being very uncooperative," jail personnel would not bring him out. Jensen stated that on November 14, 2011, he visited Jackson, who was "completely off his rocker." Jensen explained that although Jackson recognized Jensen during that visit, Jackson was yelling, punching the glass, "pointing to a Band-Aid on the inside of his arm, saying that, They are doing things to him. Look at, they took my blood. They stabbed me with things. You can't believe what they are doing to me—kind of yelling around the room." Jensen acknowledged that Jackson understood the charges against him and was sometimes helpful in analyzing the case.

The State opposed the defense request for a competency evaluation. The prosecutor noted, "The question before the Court is whether Mr. Jackson, sitting before the Court today, is competent to be here." The State played a recorded jail phone call from November 7, 2011, in which Jackson stated, "I am going to tell you more when you come here to visit me because I don't know, I might try to pump—act like I am—thinking I ought to win, and then just wait for a visit, you know what I'm saying?" The prosecutor told the court, "That would be the relevant part of the conversation where he says 'I am going to act like'—and he uses kind of lingo for crazy . . . . 'I am going to act like I am crazy and wait for a better offer.'" The State also played a recorded jail phone call from November

14, 2011, the day that defense counsel characterized Jackson as "off his rocker." In this call, which Jackson had someone place on his behalf, the caller communicated Jackson's message that "he is hoping to go to Western." The State noted that Jackson appeared lucid in both of these phone calls.

The trial court denied Jackson's motion for a competency evaluation. The court reasoned,

> I certainly think that there are some issues here that are appropriately before the Court, in terms of what has been diagnosed as a polysubstance dependence—some kind of paranoid features, and so forth—but it sounds to me like the defendant is able to understand the nature of the charges against him, and it sounds to me like the defendant is reasonably able to assist in his—in his defense—by talking with counsel.
>
> The fact that he may be paranoid, at times, does not suggest to me that he is unable to communicate with counsel; the fact that he had an episode on the 22nd—no, that was November 14, two weeks ago, does not suggest to me that he would not be able to confer with counsel.
>
> It may in fact involve special meeting times and so forth and so on, and may be a truncated schedule, but I don't see anything that suggests, on this record, that he is unable to assist the defense.
>
> And again, really—the forensic psychological evaluation from Dr. Muscatel suggests that there could be some convenient lapses in judgment on the part of the defendant, and that would not support the request to have him evaluated.

On May 15, 2012, Jackson pleaded guilty as charged. Paragraph 6(i) of Jackson's statement on the guilty plea stated,

> IN CONSIDERING THE CONSEQUENCES OF MY GUILTY PLEA(S), I UNDERSTAND THAT:
>
> . . . .
>
> The crime of Assault 1 has a mandatory minimum sentence of at least 5 years of total confinement. The law does not allow any reduction of this sentence. . . . [If not applicable, this paragraph should be stricken and initialed by the defendant and judge.]

Jackson crossed out and initialed this paragraph, but the judge did not. In the margin of the document, a handwritten bracket appears around this paragraph along with the word "Applies."

At the plea colloquy hearing, Jackson told the court that he had an opportunity to review the plea form with his attorney. The court asked Jackson if he understood "paragraph i—and this is on page 5—applies? So that assault in the first degree does have a mandatory minimum sentence of five years. Do you understand that?" Jackson replied, "Yes." The court found the plea to be knowing, intelligent, and voluntary.

Before sentencing, Jackson moved to withdraw his guilty plea based upon ineffective assistance of counsel. He told the court,

> Well, I feel like I was really manipulated into taking this plea agreement or whatever, and basically a while back, Kris Jensen, he stated that if I showed the prosecutor this thing that I did with this doctor named Muscatel . . . . that I could get 15 years, you know what I'm saying? And basically that didn't happen, it was said 15 years to 21, and I feel like that is against my rights, and I would like to be able to stand trial, and I asked Kris Jensen to file motions for me, and he said that he would not file these motions for me—to get into Western State, and things of that nature, because I really have mental problems, and he wouldn't do any of those motions.

The court appointed additional counsel to advise Jackson if a legal basis existed on which to withdraw his guilty plea.

On September 19, 2012, Jackson's new attorney filed a motion to withdraw his guilty plea. Jackson claimed that he "was confused about the proceedings and about the evidence against him" and that he "had not enough time to talk to his attorney about the case but was pressured to take the deal by

his attorney and his family." He alleged that Jensen failed to "accommodate Mr. Jackson's mental illnesses and ensure his comprehension of complex legal and factual matters." Jackson also asserted that Jensen "did not conduct the necessary investigation in order to provide Mr. Jackson with sufficient information to make a knowing and intelligent waiver."

At a hearing on this motion, Jackson alleged that he did not have enough information to make a valid waiver. His attorney argued,

> [H]e has been provided with some discovery, but not all of it; he had a couple of witnesses interviewed, but not all of them; and the defense position is that because not all of the information was provided to Mr. Jackson, and not all of the important witnesses were interviewed in this case, Mr. Jackson was not able to make a valid waiver of his rights at the time that he did the guilty plea.

The court determined that Jackson failed to show ineffective assistance of counsel sufficient to withdraw his guilty plea. The court reasoned, "There is nothing in the record to indicate that he was coerced or forced into pleading guilty—but perhaps most importantly, there is absolutely nothing in the record to show prejudice in this case." The court concluded, "Mr. Jackson has admitted to committing these heinous crimes, he has waived his trial rights, and stated that he voluntarily was making his plea of guilty, so the motion to withdraw the guilty plea is denied."

The court imposed standard range sentences of 162 months on the first degree assault count and 43 months on the second degree assault count, to run concurrently, and firearm enhancements of 60 months and 36 months, respectively, to run consecutively. The court also imposed 36 months of

community custody and an order prohibiting contact with Greenhaigh and Caster for life.

Jackson appeals.

## ANALYSIS

Jackson raises three issues. First, he claims that his guilty plea is invalid because "he was misinformed that a mandatory minimum sentence would be imposed for the first degree assault conviction under count I." Second, he asserts, "The court violated due process and statutory mandate in using the wrong standard of proof to deny a competency evaluation." Third, Jackson claims, "The court exceeded its authority in ordering no contact with the victim under count II for a period of time that exceeds the statutory minimum for the offense."

Jackson first claims that he is entitled to withdraw his guilty plea because he "was misinformed about a direct consequence of his plea because he was informed he would receive a mandatory minimum sentence but did not receive a mandatory minimum sentence."[1] A guilty plea is valid if it is intelligently and voluntarily made and if the defendant knows that he will waive certain rights.[2] A

---

[1] Jackson may raise this issue for the first time on appeal because "a defendant's misunderstanding of the sentencing consequences when pleading guilty constitutes a 'manifest error affecting a constitutional right.'" State v. Mendoza, 157 Wn.2d 582, 589, 141 P.3d 49 (2006) (internal quotation marks omitted) (citing State v. Walsh, 143 Wn.2d 1, 7-8, 17 P.3d 591 (2001)).

[2] State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996).

plea is not knowingly made if it is based upon misinformation about the sentencing consequences.[3]

The court must allow a defendant to withdraw a guilty plea if it appears necessary to correct a manifest injustice.[4] A manifest injustice exists if (1) the defendant did not ratify the plea, (2) the plea was not voluntary, (3) counsel was ineffective, or (4) the plea agreement was not kept.[5] This injustice must not be obscure; it must be obvious, directly observable, and overt.[6] "The defendant's burden when seeking to withdraw a plea is demanding because ample safeguards exist to protect the defendant's rights before the trial court accepts the plea."[7]

Jackson contends "he was informed he would receive a mandatory minimum sentence but did not receive a mandatory minimum sentence." The record does not support this claim. The provision in Jackson's statement on plea of guilty pertinent to his claim provides, "The Crime of Assault 1 has a mandatory minimum sentence of at least 5 years of total confinement. The law does not allow any reduction of this sentence." Under the facts of this case, this correctly stated the applicable law.

RCW 9.94A.540(1) provides,

---

[3] In re Pers. Restraint of Isadore, 151 Wn.2d 294, 298, 88 P.3d 390 (2004) (citing State v. Miller, 110 Wn.2d 528, 531, 756 P.2d 122 (1988)).

[4] CrR 4.2(f).

[5] State v. DeClue, 157 Wn. App. 787, 792, 239 P.3d 377 (2010) (citing State v. Marshall, 144 Wn.2d 266, 281, 27 P.3d 192 (2001)).

[6] DeClue, 157 Wn. App. at 792 (quoting State v. Taylor, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)).

[7] DeClue, 157 Wn. App. at 792 (citing Taylor, 83 Wn.2d at 596-97).

[T]he following minimum terms of total confinement are mandatory and shall not be varied or modified under RCW 9.94A.535:

. . . .

(b)   An offender convicted of the crime of assault in the first degree or assault of a child in the first degree where the offender used force or means likely to result in death or intended to kill the victim shall be sentenced to a term of total confinement not less than five years.

Although the trial court must make factual findings that a defendant meets the requirements of the statute before imposing this minimum,[8] Jackson does not challenge the State's assertion that the record would support the necessary finding easily. But nothing in the record supports Jackson's claim that he was informed that the court would in fact make the necessary findings and impose this minimum sentence. Jackson identifies no place in the record where he was told, either orally or in writing, that the court would impose a minimum sentence of five years. Instead, the record explains why the court imposed a different sentence and affirmatively demonstrates that Jackson was properly informed about the direct consequences of his plea.

With Jackson's criminal history, the standard range for his conviction for assault in the first degree was 162 to 216 months. The firearm enhancement added an additional consecutive 60 months. The firearm enhancement for the assault in the second degree conviction added another consecutive 36 months. Thus, Jackson's plea exposed him to an actual minimum standard range of 258 months. Jackson's plea agreement informed him of this and also allowed his

---

[8] State v. McChristian, 158 Wn. App. 392, 402-03, 241 P.3d 468 (2010).

counsel to request a downward deviation to 180 months "per failed mental defense."

The sentencing court noted, "This was a vicious, pointless crime against an innocent person, putting the lives of numerous innocent people at risk, a crime against a bus driver trying to do her job who was terrified half to death that she was about to die—no reason for the crime." The court declined Jackson's request to impose a sentence below the standard range and imposed the State's recommended sentence. Because Jackson fails to show any representation that the court would impose a five-year minimum sentence on the first degree assault count, he fails to show a manifest injustice. We deny his request to withdraw his guilty plea.

Jackson also claims, "The court violated due process and statutory mandate in denying the motion for a competency evaluation because it used the wrong standard of proof." He alleges that the court erroneously applied a "preponderance of the evidence" instead of a "reason to doubt" standard when deciding his request. After the trial court denied Jackson's motion for a competency evaluation, Jackson did not raise this issue again. He did not raise this issue in his motion to withdraw his guilty plea.

A decision to order a competency evaluation rests generally within the trial court's discretion.[9] A court abuses its discretion if it bases that decision upon untenable or manifestly unreasonable grounds.[10]

Because Jackson did not preserve this issue in the trial court, he must show a manifest error affecting a constitutional right.[11] We must determine if the alleged error suggests a constitutional issue and if the error is manifest—if the asserted error had practical and identifiable consequences in Jackson's case.[12] We address the merits of the constitutional issue only if the claimed error is manifest.[13] If we find a manifest constitutional error, we then apply a harmless error analysis.[14]

The due process clause of the Fourteenth Amendment to the United States Constitution prohibits the conviction of a person who is not competent to stand trial.[15] Under Washington law, an incompetent person may not be tried, convicted, or sentenced for committing an offense so long as the incapacity continues.[16] To be legally competent, a criminal defendant must be able to

---

[9] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 863, 16 P.3d 610 (2001) (citing State v. Thomas, 75 Wn.2d 516, 518, 452 P.2d 256 (1969)).

[10] State v. Jamison, 105 Wn. App. 572, 590, 20 P.3d 1010 (2001).

[11] RAP 2.5(a)(3); State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

[12] State v. Harris, 154 Wn. App. 87, 94, 224 P.3d 830 (2010) (citing State v. Lynn, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)).

[13] Harris, 154 Wn. App. at 94 (citing Lynn, 67 Wn. App. at 345).

[14] Harris, 154 Wn. App. at 94 (citing Lynn, 67 Wn. App. at 345).

[15] Fleming, 142 Wn.2d at 861 (citing Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)).

[16] Fleming, 142 Wn.2d at 862 (quoting RCW 10.77.050).

understand the nature of the charges against him and must be capable of assisting in his defense.[17] The competency standard for pleading guilty is the same as the competency standard for standing trial.[18]

When a reason exists to doubt a defendant's competency,

> the court on its own motion or on the motion of any party shall either appoint or request the secretary to designate at least two qualified experts or professional persons, one of whom shall be approved by the prosecuting attorney, to examine and report upon the mental condition of the defendant.[19]

To determine whether or not to order a competency evaluation, a trial court may consider the defendant's appearance, demeanor, conduct, personal and family history, past behavior, mental and psychiatric reports, and statements from defense counsel.[20]

If the court orders a competency hearing, a defendant has the burden of proving by a preponderance of the evidence that he is incompetent to stand trial.[21] "Preponderance of the evidence means that considering all the evidence, the proposition asserted must be more probably true than not true."[22]

---

[17] Fleming, 142 Wn.2d at 862 (citing State v. Hahn, 106 Wn.2d 885, 894, 726 P.2d 25 (1986); State v. Ortiz, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985)).

[18] Fleming, 142 Wn.2d at 862 (citing Godinez v. Moran, 509 U.S. 389, 399, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993)).

[19] Former RCW 10.77.060(1)(a) (2004).

[20] Fleming, 142 Wn.2d at 863 (quoting State v. Dodd, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)).

[21] Medina v. California, 505 U.S. 437, 450-51, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992); State v. P.E.T., 174 Wn. App. 590, 597, 300 P.3d 456 (2013), petition for review filed, No. 89157-5 (Wash. Aug. 2, 2013).

[22] State v. Otis, 151 Wn. App. 572, 578, 213 P.3d 613 (2009) (citing State v. Ginn, 128 Wn. App. 872, 878, 117 P.3d 1155 (2005)).

"[A] court is not obliged to determine a defendant's competency when there is no factual basis for doubting it in the first place."[23] The mere existence of a mental disorder does not establish incompetency.[24] And the ability to assist defense counsel does not require the defendant to be able to choose or suggest trial strategy.[25] In State v. Hicks,[26] the court determined that the fact the defendant was angry with his attorney and not fully cooperative did not mean that he was incompetent to stand trial.

When asked about the proper standard and burden of proof to order a competency hearing, the prosecutor cited City of Seattle v. Gordon[27] in stating, "Before a determination of competency is required, the Court must make a threshold determination that there is reason to doubt his competency." Jensen stated that he did not know the proper standard. The court later stated, "I believe that the standard is a preponderance of the evidence."

Jackson fails to show a manifest error warranting appellate review. Even if the court applied the incorrect standard, Jackson's communications with his attorney provide no indication that he failed to understand the charges against him or was unable to assist his attorney when he pleaded guilty. And Muscatel's report presented no evidence that Jackson was incompetent to stand trial or to

---

[23] State v. DeLauro, 163 Wn. App. 290, 296, 258 P.3d 696 (2011) (citing State v. Lord, 117 Wn.2d 829, 901, 822 P.2d 177 (1991); City of Seattle v. Gordon, 39 Wn. App. 437, 441, 693 P.2d 741 (1985)).
[24] State v. Smith, 74 Wn. App. 844, 850, 875 P.2d 1249 (1994).
[25] State v. Benn, 120 Wn.2d 631, 662, 845 P.2d 289 (1993); Ortiz, 104 Wn.2d at 483-84.
[26] 41 Wn. App. 303, 309, 704 P.2d 1206 (1985).
[27] 39 Wn. App. 437, 441, 693 P.2d 741 (1985).

plead guilty. The State's evidence suggests that Jackson was lucid and tried to appear incompetent to benefit his case. Indeed, Jensen told the court that Jackson understood the charges against him and was sometimes helpful in analyzing the case. Nothing in the record about Jackson's appearance, demeanor, or conduct during the proceedings suggests incompetence.

Finally, Jackson alleges that the trial court abused its discretion when it imposed an order prohibiting contact with Caster for life. We also review sentencing conditions for an abuse of discretion.[28] This court will usually uphold sentencing conditions if they are reasonably crime related.[29]

RCW 9.94A.505(8) permits a court to impose and enforce crime-related prohibitions as part of any sentence. A "crime related prohibition" is a court order "prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted."[30] A court may impose crime-related prohibitions "for a term of the maximum sentence to a crime, independent of conditions of community custody."[31] Crime-related prohibitions may include orders prohibiting contact with witnesses.[32]

---

[28] State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008) (citing State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)).

[29] Warren, 165 Wn.2d at 32.

[30] RCW 9.94A.030(10).

[31] Warren, 165 Wn.2d at 32 (citing State v. Armendariz, 160 Wn.2d 106, 112, 120, 156 P.3d 201 (2007)).

[32] State v. Janda, 174 Wn. App. 229, 235, 298 P.3d 751 (2012) (citing RCW 9.94A.505(8), review denied, 176 Wn.2d 1032, cert denied, 134 S. Ct. 221 (2013); Armendariz, 160 Wn.2d at 110; State v. Ancira, 107 Wn. App. 650, 656, 27 P.3d 1246 (2001).

Jackson pleaded guilty to first degree assault against Greenhaigh and second degree assault against Caster. The maximum sentence for first degree assault is life and the maximum sentence for second degree assault is 10 years.[33] Because Caster witnessed Jackson's assault against Greenhaigh and the assault against her arose from the assault against Greenhaigh, the trial court did not abuse its discretion when it prohibited contact with Caster for life.

## CONCLUSION

Because Jackson fails to establish grounds entitling him to withdraw his guilty plea, a manifest error affecting a constitutional right allowing him to challenge the trial court's denial of his motion for a competency evaluation, or that the trial court abused its discretion when it prohibited contact with Caster for life, we affirm.

_Leach, J._

WE CONCUR:

_Trickey, J_                    _Cox, J._

---

[33] RCW 9A.36.011(2); RCW 9A.20.021(1)(a); RCW 9A.36.021(2)(a); RCW 9A.20.021(1)(b).